ORIGINAL

5-22-01
FILED
HARRISBURG

MAY 21 2001

MARY E. D'ANDREA, CLE
Per _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY P. CLARKE, | : | |
| Petitioner | : | No. 1:CV-01-0738 |
| | : | |
| v. | : | (Judge Caldwell) |
| | : | |
| IMMIGRATION AND NATURALIZATION | : | (Mag. Judge Smyser) |
| SERVICE, | : | |
| Respondent | : | |

RESPONDENT'S BRIEF OPPOSING
THE PETITION FOR A WRIT OF HABEAS CORPUS

### Introduction

This is a habeas corpus matter brought by an alien, Gregory P. Clarke, a native and citizen of Barbados, who is in the custody of the Immigration and Naturalization Service ("INS"). Clarke alleges that he is being indefinitely detained by the INS. On May 7, 2001, the Court ordered the habeas petition served on the INS.

The INS maintains that Clarke is being properly detained pending his removal to Barbados as authorized by the immigration laws. Additionally, Clarke's detention is not indefinite, with his custody status being periodically reviewed. Indeed, the INS recently considered releasing Clarke on bond pending his removal but believed Clarke to pose both a flight risk and a threat to society if released. Accordingly, the habeas petition should be denied.

## Statement of Facts

Clarke is a citizen of Barbados who entered the United States in 1986.

Clarke was convicted of larceny in 1998 and received an eighteen month sentence. As a result, the INS placed Clarke in removal proceedings in November 1999 and charged him with being removable under 8 U.S.C. §1227(a)(2)(A)(iii). Exh. 1 (Notice to Appear).

On December 17, 1999, an Immigration Judge ordered Clarke removed from the United States. Exh. 2. Clarke reserved his right to appeal to the Board of Immigration Appeals ("BIA"). Exh. 3. Clarke subsequently requested to withdraw his appeal, which the BIA granted on April 19, 2000. Exh. 4 (BIA Order).

Clarke later moved to reopen his immigration proceedings in an attempt to seek relief from removal under 8 U.S.C. §1182(h). The immigration judge denied the motion to re-open on October 27, 2000. Exh. 5. In the meantime, the INS attempted to obtain travel documents for Clarke. See Exh. 7, pg. 5.

in January 2001, the INS advised Clarke that he would be considered for release on bond pending removal and that he had the opportunity to present evidence on why such relief should be granted. Clarke, however, waived his right to present evidence and asked the INS to review his custody status immediately. Exh. 6.

2

Therefore, on January 25, 2001, an INS deportation officer reviewed Clarke's file to make a recommendation as to whether Clarke should be released pending his removal to Barbados. Exh. 7. The deportation officer first concluded that he believed that Clark would return to crime and theft if released in light of his lengthy history of arrests. Id., pg.5.

The deportation officer also observed that Clarke had hindered the INS' attempts to obtain travel documents for him by requesting the consulate not to issue travel papers. Based upon his experience, the deportation officer believed that Clarke would have been returned to Barbados long before if Clarke had not delayed the issuance of a travel document. In light of Clarke's attempt to circumvent the immigration laws to avoid deportation, the deportation officer found no evidence to show that Clarke would appear for removal or abide by the conditions of release, with Clarke clearly posing a flight risk. Exh. 7.

The INS District Director or his designee reviewed this information and recommendation and determined that Clarke should remain in INS custody, with another review to be scheduled in six months. Exh. 7, pg. 6. Clarke received notice of this decision on February 2, 2001. Exh. 8. This habeas petition then followed.

### QUESTION PRESENTED

Should Clarke's petition for a writ of habeas corpus be denied in that Clarke is being lawfully detained under the immigration statute and regulations, with Clarke's custody status being periodically reviewed?

3

**ARGUMENT**

**CLARKE'S PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DENIED IN THAT CLARKE IS BEING LAWFULLY DETAINED UNDER THE IMMIGRATION STATUTE AND REGULATIONS, WITH CLARKE'S CUSTODY STATUS BEING PERIODICALLY REVIEWED.**

A.  **The Statutory and Regulatory Provisions Governing Detention Pending Deportation.**

Under 8 U.S.C. §1226(c) and §1231(a)(1),(2), the Attorney General[1] must detain criminal aliens during removal proceedings and during the initial 90 days after the entry of a final order of removal. After the 90-day removal period, §1231(a)(6) of the Immigration and Naturalization Act authorizes the Attorney General to detain criminal aliens and any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. §1231(a)(6). An alien seeking release from custody must demonstrate by clear and convincing evidence that he or she is not a threat to the community and is likely to comply with the removal order when it can be executed -- with a number of factors to be considered by the district director. 8 U.S.C. §1231(a)(6).

Initially, the INS implemented the detention provisions contained in §1231 through the regulations found at 8 C.F.R. §241 and "interim" custody review procedures established by the INS; the latter custody review was known as a "Pearson review." See Ngo v.

---

[1] The Act references the authority of the Attorney General, which has been duly delegated to the INS and other branches of the Executive Office for Immigration Review. 8 C.F.R. §§2.1, 100.2(a).

4

Immigration and Naturalization Service, 192 F.3d 390, 400-401 (3rd Cir. 1999)(Appendix). Effective December 21, 2000, however, new regulations were promulgated by INS to provide permanent, plus more comprehensive, review procedures to govern the detention of criminal, inadmissible, and other aliens who had received a final order of removal but whose departure could not be effected. See 65 Fed. Reg. 246 (2000)(to be codified at 8 C.F.R. pts. 212, 236, and 241). These procedures now govern the review of Clarke's custody status.

The new regulations establish a custody review program modeled after the regulations establishing the Cuban Review Plan, which governs the review of excludable Mariel Cubans who are in INS custody and whose removal to Cuba is not currently possible or practicable. See 8 C.F.R. §212.12. These new regulations permit a comprehensive and fair review of the continued detention of aliens through a process that "is intended to balance the need to protect the American public from potentially dangerous aliens, who remain in the United States contrary to law with the humanitarian concerns arising from another country's unjustified delay or refusal to accept the return of its nationals." 65 Fed. Reg. at 80282.

The new procedures consist of a review by the district director of the alien's records and any written submissions submitted by or on behalf of the alien to the district director, or

5

any other relevant evidence, prior to the expiration of the 90-day removal period. 8 C.F.R. §241.4(h)(1), as amended, 65 Fed. Reg. at 80296. The district director may, in his or her discretion, schedule a personal or telephonic interview with the alien as part of the custody review determination. Id.

The district director must provide written notification to the alien regarding whether the alien will continue to be detained pending removal or will be released. 8 C.F.R. §241.4(k)(1), as amended, 65 Fed. Reg. at 80297. When release is denied pending the alien's removal, the district director, in his or her discretion, may retain the responsibility for custody determinations for up to three months after expiration of the 90-day removal period, during which time the district director may conduct such additional review of the case as he or she deems appropriate. 8 C.F.R. §241.4(k)(1), as amended, 65 Fed. Reg. at 80297. The district director may release the alien if the alien is not removed within this time frame or the district director may refer the matter to INS Headquarters Post-Order Detention Unit (HQPDU) for further custody review. 8 C.F.R. §241.4(k)(1), as amended, 65 Fed. Reg. at 80297.

If the alien is continued in custody, following the 90-day review and the alien has not been removed within three months of the district director's decision, authority over the custody determination transfers to the Executive Associate

Commissioner at INS headquarters. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The initial HQPDU review will ordinarily be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable and the alien will be provided with approximately 30 days notice of that review. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. Subsequent reviews for a detainee ordinarily will be commenced within approximately one year of a decision by the Executive Associate Commissioner declining to grant release. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. Not more than once every three months in the interim between annual reviews, the alien may submit a written request to the HQPDU for release consideration based on a proper showing of a material change in circumstances since the last annual review. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The regulation requires the HQPDU to respond in writing within approximately 90 days. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297.

The new regulation also provides that the annual reviews conducted by HQPDU shall be by a two-person panel (requiring a unanimous vote) or three-person panels (requiring a majority vote) that will make recommendations to the Executive Associate Commissioner regarding whether an alien should be released or continue to be detained. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. At the beginning of each annual review, a

7

review panel member shall do a record review and if the Director of the HQPDU does not accept a panel's recommendation to grant release following a records review or if the alien is not recommended for release, a review panel shall personally interview the detainee. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The alien, with limited exceptions, may be accompanied during the interview by a person of his choice. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The alien may submit to the review panel any information that the alien believes presents a basis for his or her release. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The panel's recommendation is required to be in writing and is to include a brief statement of the factors the review panel deems material to its recommendation. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297. The Executive Associate Commissioner is not bound, however, by the review panel's recommendation. 8 C.F.R. §241.4(k)(2), as amended, 65 Fed. Reg. at 80297.

To release an alien, the decision-maker must conclude that: (1) travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest; (2) the detainee is presently a non-violent person; (3) the detainee is likely to remain non-violent if released; (4) the detainee is not likely to pose a threat to the community if released; (5) the

detainee is not likely to violate the conditions of release; and (6) the detainee does not pose a significant flight risk if released. 8 C.F.R. §241.4(e), as amended, 65 Fed. Reg. at 80295. A list of factors for the district director, review panel, and Executive Associate Commissioner to consider in making their recommendations or decisions is provided at 8 C.F.R. § 241.4(f), as amended, 65 Fed. Reg. at 80295-96.

B.  **Clarke's Detention is Proper**

In his habeas petition, Clarke alleges that his detention by the INS is indefinite. As just explained, however, Clarke's detention is governed by the Immigration and Naturalization Act and applicable regulations. The intent of the custody provisions is to balance the government's interest in enforcement of its immigration laws and to protect the public from potentially dangerous aliens with the alien's interest to be free from custody. Moreover, Clarke is not being detained indefinitely but, rather, he is having his custody status periodically reviewed.

Accordingly, to the extent Clarke is claiming his current detention is unlawful, Clarke is incorrect -- with the law explicitly authorizing his detention. As to Clarke's assertion that the INS has been unable to obtain travel documents for him for fifteen months, page 5 of Exhibit 7 reflects that it is Clarke who has interfered with and delayed the receipt of his travel

documents. Clarke surely cannot complain about his detention pending removal when he is the one responsible for that delay.

Last, we note that Clarke has not challenged his detention, or the underlying statute and regulations, as being unconstitutional. Regardless, the prior detention provisions and the Mariel Cuban detention regulations, upon which the current detention regulations are based, have been found to be constitutional by a number of courts. See, e.g., Ho v. Green, 204 F.3d 1045 (10th Cir. 2000); Ngo v. Immigration and Naturalization Service, 192 F.3d 390 (3rd Cir. 1999); Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999); Guzman v. Tippy, 130 F.3d 64 (2nd Cir. 1997); Gisbert v. U.S. Attorney General, 988 F.2d 1437, 1447 (5th Cir. 1993); Alvarez-Mendez v. Stock, 941 F.2d 956 (9th Cir. 1991); Garcia-Mir v. Meese, 788 F.2d 1446 (11th Cir. 1986); Palma v. Verdeyen, 676 F.2d 100, 103-104 (4th Cir. 1982); In re Mariel Cubans, 822 F.Supp. 192, 195-96 (M.D.Pa. 1993)(continued detention pending deportation does not violate aliens' due process rights).[2]

---

[2] Additionally, we note that the current statutory provisions governing the detention of aliens, including the new custody review regulations, are before the Supreme Court. See Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999), cert. granted, 121 S.Ct. 297 (U.S. Oct. 10, 2000)(No. 99-7791); Ma v. Reno, 208 F.3d 815 (9th 2000), cert. granted, 121 S.Ct. 297 (U.S. Oct. 10, 2000)(No. 00-38). A decision concerning the constitutionality of the provisions is expected to issued by June 30, 2001.

## CONCLUSION

For the above-stated reasons, Clarke's detention is authorized by law and the writ of habeas corpus should be denied.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

KATE L. MERSHIMER
Assistant United States Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA    17108-1754
(717) 221-4482

Date: May 21, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY P. CLARKE,<br>    Petitioner | : | No. 1:CV-01-0738 |
| v. | : | (Judge Caldwell) |
| IMMIGRATION AND NATURALIZATION SERVICE,<br>    Respondent | : | (Mag. Judge Smyser) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 21st day of May, 2001, she served a copy of the attached

**RESPONDENT'S BRIEF OPPOSING
THE PETITION FOR A WRIT OF HABEAS CORPUS**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:

Gregory P. Clarke
PIKE COUNTY JAIL
HC 8 Box 8601
Hawley, PA   18428

_____
CINDY J. LONG
Legal Secretary